767 A.2d 855

**Sean WHITE,**

v.

**STATE of Maryland.**

**No. 70, Sept. Term, 2000.**

Court of Appeals of Maryland.

March 5, 2001.

William P. Robinson, Jr., Robinson and Anderson, Norfolk, VA; Bruce Anderson, Salisbury, on brief, for petitioner.

Kathryn Grill Graeff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

HARRELL, Judge.

Charged with importation of cocaine (count one), possession of cocaine with the intent to distribute (count two), possession of cocaine (count three), conspiracy to import cocaine (count four), conspiracy to possess cocaine with the intent to distribute (count five), and possession of paraphernalia (count six),

Sean Julian White (Petitioner) was convicted by a jury in the Circuit Court for Wicomico County of the crimes charged in counts one through five.[1] On 29 September 1999, Petitioner appealed to the Court of Special Appeals, which affirmed the lower court's judgments. *White v. State*, 132 Md.App. 640, 753 A.2d 578 (2000). We granted White's petition for a writ of certiorari. *White v. State*, 360 Md. 485, 759 A.2d 230 (2000).

The petition for certiorari presented the following questions:

1. Did the Court of Special Appeals err in determining that Petitioner could not avail himself of an unconstitutional traffic stop, even though Petitioner, as a passenger in the vehicle, did not have standing to question the search of the vehicle itself?

2. Did the Court of Special Appeals err in determining that the evidence was legally sufficient to establish constructive possession of the cocaine found in the trunk of the vehicle in which he was a passenger?

3. Did the Court of Special Appeals err in determining that the evidence was legally sufficient to establish that Petitioner was guilty of possession of cocaine with intent to distribute, conspiracy to import cocaine into the State of Maryland, and conspiracy to possess cocaine with intent to distribute[?] [2]

---

**1.** At the conclusion of the State's evidence, the trial judge granted a Motion for Judgment of Acquittal with respect to count six, possession of paraphernalia.

**2.** His certiorari petition notwithstanding, we note that the questions framed by Petitioner in his brief were:

1. Was the evidence sufficient to sustain convictions for importation, possession of cocaine with intent to distribute, possession of cocaine, conspiracy to import, and conspiracy to possess with intent to distribute?

2. Was Petitioner illegally seized of his person in violation of Fourth and Fourteenth Amendments to the Constitution of the United States?

Petitioner's Brief at 4. It appears that Petitioner re-organized and/or merged for briefing his three petition questions, without substantive change. White also inserted a third contention in the latter part of his brief, which contention was not encompassed in his petition questions.

We shall answer a question embedded in issues two and three in the affirmative and reverse. We shall not reach any of Petitioner's other issues.

**I.**

While on routine patrol the evening of 21 January 1999, two Maryland State troopers, Sergeant Michael Lewis and Corporal Gary Bromwell, observed three vehicles traveling southbound on Route 13 in Wicomico County, Maryland, approximately five miles from the Delaware state line, in what appeared to the troopers to be a procession. The troopers stopped the middle and end vehicles for following too closely for safe operation during inclement weather.[3] The troopers each attended to an automobile: Corporal Bromwell gave the driver of the end vehicle a warning and allowed him to continue on his way. The present case arises from the series of events that occurred during the interaction of mainly Sergeant Lewis with the driver, Kendrick Charity, Petitioner's co-defendant, and the passenger, Sean Julian White (Petitioner), of the middle automobile.

After informing Charity why he was stopped, Lewis requested his driver's license and vehicle registration. Charity provided a North Carolina license and registration.[4] Observing that Petitioner was sitting in the front passenger seat, but not wearing a seat belt, Lewis asked Petitioner for his driver's license as well.[5] Petitioner proffered to Lewis a New York

---

*See* Petitioner's Brief at 19. We comment on that question in Part V, *supra.*

3. Lewis testified at White's 30 August 1999 trial that the weather conditions were "rainy, foggy, and damp," and that there "was a steady rain, but it wasn't [initially] a downpour. It became a down pour."

4. Petitioner conceded that he had no possessory interest in Charity's vehicle.

5. Maryland is a primary restraint state. *See* Md.Code (1974, 1999 Repl.Vol.), § 22–412.3(c)(2) of the Transportation Article ("Unless a person is restrained by a seat belt, the person may not be a passenger in an outboard front seat of a motor vehicle."). Maryland Code (1974,

driver's license. During this interaction, Lewis noticed a Chesapeake Bay Bridge tunnel toll receipt, with a date of 20 January 1999 and a time of 20:09 hours (8:09 PM), on the center console, and an overwhelming pine scent emitted by dozens [6] of pine tree-shaped air fresheners hanging from the car's rear view mirror. Testifying that he "stood near the driver's door for a very short period because [he] was literally having difficulty talking because of the overwhelming odor," Lewis asked Charity to step to the rear of the car. Once there, Lewis proceeded to question him about his immediate journey. Charity indicated that he and Petitioner had just spent a week "up north" and were on their way to Charlotte, North Carolina. Observing that Charity avoided eye contact with him, Lewis also remarked that he "could see [Charity's] carotid pulse pounding in his neck. His chest was palpitating.... I could actually see his heart pounding through his shirt."

Lewis testified that, while questioning Charity, he also took note of Petitioner's conduct as he sat in the car. Noticing that Petitioner rolled down his passenger-side window and left it open despite the heavy rain outside,[7] Lewis ultimately approached Petitioner and asked about his and Charity's journey. Petitioner replied that they were coming from New York, where they had stayed for a few days, and that they were driving to Chesapeake, Virginia, to attend a relative's funeral.[8] Petitioner then pointed to clothing in the backseat of

---

1999 Repl.Vol.), § 22–412.3(a)(3) of the Transportation Article defines "outboard front seat" as "a front seat position that is adjacent to a door of a motor vehicle."

6. Lewis testified that he later counted 72 air fresheners in all. The air fresheners were not submitted in evidence at trial.

7. *See* note 3, *supra.*

8. We note there is some discrepancy in Lewis's overall testimony at trial in this regard. On direct examination, Lewis testified that Petitioner "told me they were coming from New York, and they had been up there for a couple of days and were headed down to Chesapeake, Virginia to attend a funeral for his *uncle.*" (Emphasis added). On

the car that he said he was going to wear to the funeral. During this interaction, Lewis observed that Petitioner looked straight ahead or at the side view mirror [9] to watch Charity standing behind the vehicle, but not at Lewis.

Noting that both of the vehicle's occupants exhibited what Sergeant Lewis considered to be "nervous" behavior and that their stories were inconsistent with each other, as well as with the implication of the toll receipt, Lewis returned to speak with Charity. Wanting to continue the questioning in his patrol car because the rain storm was worsening,[10] Lewis, as a precaution, asked Charity if he could conduct a pat-down. Charity agreed; during the pat-down, Lewis felt a suspicious object in one of Charity's pockets, leading Lewis to ask Charity what it was. In response, Charity emptied his pockets and removed, among other things, what Lewis thought to be a small bag of marijuana (later confirmed to be just that). Upon seeing the suspected drugs, Lewis, suspecting Petitioner and Charity were involved in criminal activity,[11] informed

---

cross examination, however, Lewis stated that Petitioner said "we have been in New York for a couple of days and we are headed to Chesapeake, Virginia to attend a funeral for my *aunt*. That is what he said to me." (Emphasis added). Although this discrepancy was a point of contention at trial, White does not press it on appeal.

9. Lewis testified that Petitioner "kept looking into the rear view mirror to his right," which we interpret to refer to the side view mirror on the passenger side of the automobile.

10. *See* note 3, *supra.*

11. During the 30 August 1999 trial, the following exchange occurred between Lewis and the State's Attorney concerning why Route 13, the road on which Charity and Petitioner were stopped, heightened Lewis's suspicion that Charity and Petitioner were involved in criminal activity.
  [STATE]: Have you had occasion to work on the Route 13 Bypass in the past?
  [LEWIS]: I was.
  [STATE]: Could you describe based on your training and experience what you know Route 13 and Route 13 Bypass to be used for in relation to the drug trade?
  [LEWIS]: U.S. Route 13 is a main conduit, a large pipeline for criminal activity coming from New York which remains our number one source city in the world today for narcotics traveling to the

Charity that finding drugs "authorizes me to conduct a full-blown search of your vehicle." Lewis asked Petitioner to get out of the car and to stand at the rear of the vehicle alongside Charity and Corporal Bromwell [12] while Lewis searched the vehicle.

Lewis searched both the passenger compartment and the trunk of Charity's car. While searching the passenger compartment, Lewis found the "funeral" clothes that Petitioner had referred to earlier and two additional receipts: one, from The "Original" Guaranteed Used Tire Company, dated 20 January 1999; the other, from the Queens Mid. Tunnel, issued on 21 January 1999 at 13:20 hours (1:20 PM). While searching the vehicle's trunk, Lewis found two travel bags, one belonging to Petitioner and one to Charity, and a large, apparently factory-sealed box containing pots and pans. Lewis removed the box from the car so that he could continue to search the trunk. When he returned his attention to the box, he noticed that the factory packaging tape on the bottom of the box appeared to have been re-taped. Lewis removed the tape, opened the box, and found pots and pans in their original packaging. Upon closer inspection inside the box, however, Lewis found a large duct-taped package containing what proved to be 194 grams of cocaine. Lewis and Bromwell promptly arrested Charity and Petitioner.

Petitioner was charged on 5 April 1999 with importation of

---

southern states which is Virginia, North Carolina, South Carolina and Georgia.
[STATE.]: And if you continue south on Route 13 Bypass, where does that lead you to ultimately?
[LEWIS]: To the Eastern Shore of Virginia across the Bay Bridge Tunnel down in the Norfolk, Virginia Beach and Hampton Roads area.
We note that the Hampton Roads area encompasses Chesapeake, Virginia, Petitioner's supposed destination.

12. Bromwell was occupied with the third or trailing vehicle until this point in the chain of events. Noticing nothing unusual about Petitioner's behavior, Bromwell testified that Petitioner remained quiet or engaged in "small talk of irrelevant material" while Lewis searched Charity's vehicle.

cocaine (count one),[13] possession of cocaine with the intent to distribute (count two),[14] possession of cocaine (count three),[15] conspiracy to import cocaine (count four),[16] conspiracy to possess cocaine with the intent to distribute (count five),[17] and possession of paraphernalia (count six).[18] Petitioner was con-

---

13. Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 286A states, in pertinent part:

   (a) *In general.*—A person who brings into this State any of the following controlled dangerous substances which it is unlawful for that person to possess, in the amounts indicated, upon conviction, is subject to the penalty provided. . . .

   . . . .

   (2) 28 grams or greater of cocaine or any mixture containing 28 grams or greater of cocaine. . . .

14. Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 286 states, in pertinent part:

   (a) Except as authorized by this subheading, it is unlawful for any person:
   (1) To ... possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance. . . .

15. Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 287 states, in pertinent part:

   Except as authorized by this subheading, it is unlawful for any person:
   (a) To possess or administer to another any controlled dangerous substance, . . . .

16. Conspiracy is a common law misdemeanor in Maryland. *See Johnson v. State,* 362 Md. 525, 527–28, 766 A.2d 93, 94 (2001); *Gary v. State,* 341 Md. 513, 518 n. 5, 671 A.2d 495, 497 n. 5 (1996) (citing *Archer v. State,* 145 Md. 128, 136, 125 A. 744, 746 (1924)). In *Monoker v. State,* 321 Md. 214, 582 A.2d 525 (1990), we noted that "[o]ur cases have consistently defined criminal conspiracy as the combination of two or more people to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means." 321 Md. at 221, 582 A.2d at 528 (citing *Birchead v. State,* 317 Md. 691, 707, 566 A.2d 488, 496 (1989); *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832, 834 (1988); *Mason v. State,* 302 Md. 434, 444, 488 A.2d 955, 960 (1985); *Gardner v. State,* 286 Md. 520, 523, 408 A.2d 1317, 1319 (1979)).

17. *Id.*

18. Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 287A states, in pertinent part:

victed by a jury in the Circuit Court for Wicomico County of counts one through five.[19]

On 29 September 1999, following sentencing, Petitioner appealed the trial court's judgments to the Court of Special Appeals. In his brief to the Court of Special Appeals, Petitioner raised three issues: whether the trial judge erroneously failed to strike two potential jurors for cause; whether Petitioner was unlawfully seized when the traffic stop of the vehicle in which he was riding was unconstitutionally protracted; and whether the evidence was legally sufficient to establish constructive possession on Petitioner's part of the contraband cocaine found in the trunk of the automobile in which he was riding. On 8 June 2000, finding no merit in White's argument, the intermediate appellate court affirmed the lower court's judgments. *White v. State,* 132 Md.App. 640, 753 A.2d 578 (2000). Petitioner petitioned this Court for a writ of certiorari, which we granted on 11 September 2000. *White v. State,* 360 Md. 485, 759 A.2d 230 (2000).

## II.

Petitioner, paraphrasing in his brief a question framed also in his petition for writ of certiorari, argues that his person was illegally seized in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States. Although in his brief he discusses meaningfully virtually no case law to support this assertion and concedes that he has no standing to challenge the search of Charity's vehicle because he had no possessory interest in it, Petitioner maintains that he was, nonetheless, the subject of an unlawful seizure of his person when Lewis asked him to exit Charity's vehicle. Be-

---

(c) *Use or possession with intent to use.*—It is unlawful for any person to use, or to possess with the intent to use, drug paraphernalia to . . . pack, repack, store, contain, conceal, . . . or otherwise introduce into the human body a controlled dangerous substance in violation of this subheading. . . . .

**19.** *See* note 1, *supra.*

cause we shall decide this case on another ground, we need not decide this contention.

## III.

### A.

In his brief, Petitioner melds issues two and three of his certiorari petition by asserting that the evidence in the record was insufficient to sustain convictions for importation, possession of cocaine with intent to distribute, possession of cocaine, conspiracy to import, and conspiracy to possess with intent to distribute. Specifically, Petitioner submits that the State failed to meet its burden of proving, beyond a reasonable doubt, that Petitioner "knowingly and intentionally possessed, either actually or constructively, [194 grams of cocaine] in such a manner as to indicate his clear intent to exercise dominion and control over same ." [20] Arguing that the State's evidence proved at most that he was a passenger in a vehicle owned by Charity, Petitioner finds support in the facts that the cocaine was located in a sealed box in the vehicle's trunk, out of plain view, and that there was no odor of drugs emanating from the trunk with which he could be charged with detecting. As to the "dozens" of air fresheners Lewis testified were inside the passenger compartment of the vehicle, Petitioner questions why those air fresheners, representing part of the circumstances that heightened Lewis's suspicions that the vehicle might be transporting controlled substances, were not submitted in evidence.

Arguing that there was sufficient evidence in the record to sustain Petitioner's convictions, the State finds succor in *McDonald v. State,* 347 Md. 452, 701 A.2d 675 (1997), where we were asked to consider, among other issues, whether the evidence was sufficient to support the appellant's convictions of possession of a controlled substance with the intent to distribute and possession of marijuana. In making this determination, we stated that

---

20. Petitioner's Brief at 8.

[t]o prove control, the " 'evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited ... drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or direct influence over it.' " *State v. Leach*, 296 Md. 591, 596, 463 A.2d 872, 874 (1983) (quoting *Garrison v. State*,[21] 272 Md. 123, 142, 321 A.2d 767, 777 (1974)); *see Taylor v. State*, 346 Md. 452, 457–58, 697 A.2d 462, 465 (1997). The accused must have knowledge of both the presence and the general character or illicit nature of the substance. *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041, 1047 (1988). "[S]uch knowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Id.*

*McDonald*, 347 Md. at 474, 701 A.2d at 685 (alterations in original). To prove that the record evidence supported the jury's rational inference that Petitioner possessed knowledge of, and exercised dominion and control over, the cocaine in the trunk of Charity's vehicle, the State applies the factors utilized in *Hall v. State*, 119 Md.App. 377, 705 A.2d 50 (1998), by the Court of Special Appeals when it determined that there was sufficient evidence to establish joint ownership of controlled substances and paraphernalia in a defendant's home:

1) proximity between defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

---

**21.** Certain language in *Garrison v. State*, 272 Md. 123, 321 A.2d 767 (1974), has been disapproved subsequently. Although the Court in *Garrison* stated that "the State is not required to show that the accused's dominion or control over the narcotic drug was knowing and wilful," 272 Md. at 142, 321 A.2d at 777, we later held that knowledge is an element of possession. See *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041, 1047 (1988), and our discussion of the "knowledge element" in Part III.C, *infra*.

*Hall,* 119 Md.App. at 394, 705 A.2d at 58 (quoting *Folk v. State,* 11 Md.App. 508, 518, 275 A.2d 184, 189 (1971)). The State argues that the jury in White's case could have drawn a reasonable inference of Petitioner's guilt from Lewis's testimony that he was overwhelmed by the odor of the air fresheners emanating from the passenger compartment of the vehicle; he believed Petitioner's statement as to the duration and purpose of the journey was inconsistent with Charity's response to the same inquiry and the toll receipts; and, he was aware that Route 13 was a "major pipeline for criminal activity coming from. New York, which is the number one source city for cocaine traveling to other states." Brief of Respondent at 11.

### B.

When reviewing the sufficiency of the evidence, " 'it is not the function or duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case.' " *McDonald,* 347 Md. at 474, 701 A.2d at 685 (citing *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336, 337 (1994)). Our function is to review the evidence in the light most favorable to the State, *see id.* (quoting *Albrecht,* 336 Md. at 478, 649 A.2d at 337 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979))), and to give " 'due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.' " *Id.* (citing *Albrecht,* 336 Md. at 478, 649 A.2d at 337). While we do not re-weigh the evidence, we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt. *See id.* (citing *Albrecht,* 336 Md. at 478–79, 649 A.2d at 337).

The State's case against Petitioner rested on circumstantial evidence that Petitioner was in joint and constructive possession of the cocaine found in the pots and pans box in the vehicle's trunk. *See id.* Although a conviction may rest on circumstantial evidence alone, a conviction may not be sus-

tained on proof amounting only to strong suspicion or mere probability. *See Taylor v. State,* 346 Md. 452, 458, 697 A.2d 462, 465 (1997) (citing *Wilson v. State,* 319 Md. 530, 535–36, 573 A.2d 831, 834 (1990)). " 'Circumstantial evidence which merely arouses suspicion or leaves room for conjecture is obviously insufficient. It must do more than raise the possibility or even the probability of guilt. [I]t must ... afford the basis for an inference of guilt beyond a reasonable doubt.' " *Id.* (alterations in original) (quoting 1 UNDERHILL CRIMINAL EVIDENCE § 17, at 29 (6th ed.1973)).

## C.

"Possession shall mean the exercise of actual or constructive dominion or control over a thing by one or more persons." Md.Code (1957, 1996 Repl.Vol.), § 277(s). As the State accurately noted, [t]o prove control, the " 'evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited ... drug in the sense contemplated by the statute, *i.e.,* that [the accused] exercised some restraining or direct influence over it.' " *McDonald,* 347 Md. at 474, 701 A.2d at 685 (alterations in original) (quoting *State v. Leach,* 296 Md. 591, 596, 463 A.2d 872, 874 (1983) (quoting *Garrison v. State,*[22] 272 Md. 123, 142, 321 A.2d 767, 777 (1974))); *see Taylor v. State,* 346 Md. 452, 457–58, 697 A.2d 462, 465 (1997). Moreover, Judge Eldridge, writing for the Court in *Dawkins v. State,* 313 Md. 638, 547 A.2d 1041 (1988), concluded that "an individual would not be deemed to exercise 'dominion or control' over an object about which he is unaware. Knowledge of the presence of an object is normally a prerequisite to exercising dominion and control." *Dawkins,* 313 Md. at 649, 547 A.2d at 1046.

In *Taylor v. State,* 346 Md. 452, 697 A.2d 462 (1997), police, after smelling marijuana in a hallway, entered a motel room rented by Taylor and four friends. *Taylor,* 346 Md. at 455, 697 A.2d at 463. The police saw clouds of smoke, smelling like marijuana, wafting in the room and, while searching the room,

---

**22.** *See* note 21, *supra.*

discovered bags of marijuana and a packet of rolling papers inside two carrying bags. *Id.* Taylor, whom the police found lying on the floor asleep or feigning sleep, was charged with possession of the marijuana found in the bags. *Taylor,* 346 Md. at 456, 697 A.2d at 464. Taylor was convicted because

> [t]he trial court found that Petitioner was in close proximity to the marijuana; that, because people were smoking marijuana in Petitioner's presence, Petitioner "knew" there was marijuana in the room; that, because he was on the premises asleep or pretending to be asleep, he had some possessory right in the premises; and that the circumstances were sufficient to draw a reasonable inference that Petitioner was participating with others in the mutual enjoyment of the contraband.

*Id.* We concluded, however, that the evidence did not justify any reasonable inference that Taylor knew about, and thus possessed, the contraband. Writing for the Court, Judge Raker explained that "[m]ere proximity to the drug, mere presence on the property where it was located, or mere association, without more, with the person who does control the drug or property on which it is found, is insufficient to support a finding of possession." *Taylor,* 346 Md. at 460, 697 A.2d at 466 (quoting *Murray v. United States,* 403 F.2d 694, 696 (9th Cir.1969) (internal quotation marks and citations omitted)).

There is a substantial question whether the evidence in this case establishes beyond a reasonable doubt that Petitioner had knowledge of the presence of the cocaine hidden in a sealed box of pots and pans found inside the trunk of Charity's vehicle. Although Petitioner, by virtue of being a passenger in Charity's vehicle, was in close proximity to the cocaine, on this record he did not have a possessory right in, or control over, the vehicle. Additionally, Charity's behavior, when contrasted with Petitioner's, is distinguishable. Charity, who arguably knew that 194 grams of cocaine were in the trunk of his automobile,[23] was so nervous that Lewis claimed he could

---

**23.** Charity's conviction for possession of cocaine with the intent to distribute was reversed by the Court of Special Appeals on the ground

see Charity's carotid artery pulsing in his neck and his heart pounding through his shirt. No such dramatic observations, however, were attributed to Petitioner, who claims ignorance as to the existence of the contraband. Although Lewis did state that Petitioner would not look at him during questioning, his compatriot, Corporal Bromwell, noted nothing unusual about Petitioner's behavior, and testified that Petitioner remained quiet or engaged in small talk while Lewis searched Charity's vehicle.

Assuming *arguendo* that there was evidence in the record sufficient to establish beyond a reasonable doubt the knowledge requirement for possession, we conclude nonetheless that there was not sufficient evidence establishing that Petitioner exercised dominion and control over the cocaine. In *State v. Leach*, 296 Md. 591, 592, 463 A.2d 872 (1983), two brothers, Michael and Stephen Leach, were arrested for possession of a controlled substance (phencyclidine or PCP) and related paraphernalia found in Michael's one-bedroom apartment. The question before us was whether Stephen, who had a key to Michael's apartment, which address he provided to the Motor Vehicle Administration and the arresting officer as his home address, was guilty of joint possession of the PCP. *Leach*, 296 Md. at 595, 463 A.2d at 874. We concluded that

> the fact finding that Michael was the occupant of the Premises precluded inferring that Stephen had joint dominion and control with Michael over the entire apartment and over everything contained anywhere in it. Even though Stephen had ready access to the apartment, it cannot be reasonably inferred that he exercised restraining or directing influence over PCP in a closed container on the bedroom dresser or over paraphernalia in the bedroom closet. If one assumes that the scales and magnifier found in plain view in

---

that his motion to suppress the cocaine was denied erroneously by the trial court. *Charity v. State*, 132 Md.App. 598, 753 A.2d 556, *cert. denied*, 360 Md. 487, 759 A.2d 231 (2000). The intermediate appellate court held that Charity's detainment became unconstitutional as of the time Trooper Lewis requested permission to, and executed, the pat down.

the kitchen at the time of the search were always kept there, still those items are intrinsically innocuous. They become significant by association with drugs or cutting agents.

*Id.*

In *Livingston v. State,* 317 Md. 408, 409, 564 A.2d 414, 415 (1989), a state trooper, during a routine traffic stop for speeding on Interstate 95 at around midnight, spied two marijuana seeds on the front floor of the automobile. As a result of his visual acuity (aided by his flashlight), this discovery led the trooper to arrest the vehicle's driver and two passengers, and, during a search incident to the arrest, to the discovery of cocaine and marijuana in Livingston's, the backseat passenger, pocket. *Id.* Convicted for possession of cocaine with the intent to distribute, possession of cocaine, and possession of marijuana, Livingston appealed, questioning whether, relying solely on the contraband's proximity, the trooper had sufficient cause to believe that a backseat passenger with no possessory interest in the vehicle had dominion and control over the marijuana seeds found on the front floor of the automobile. *Id.* We determined that

[m]erely sitting in the backseat of the vehicle, Livingston did not demonstrate to the officer that he possessed any knowledge of, and hence, any restraining or directing influence over two marijuana seeds located on the floor in the front of the car.

Without more than the mere existence of the two marijuana seeds located in the front of the car, we hold that the police officer lacked probable cause to arrest Livingston, a rear seat passenger, for possession of cocaine.

*Livingston,* 317 Md. at 416, 564 A.2d at 418.

■ After reviewing the record in White's case in a light most favorable to the State, we hold the circumstantial evidence upon which the State's case rested was insufficient as a matter of law to support, beyond a reasonable doubt, that Petitioner exercised dominion or control over the cocaine found inside the pots and pans box in the trunk of Charity's

automobile. If the rational fact finder was not permitted to infer reasonably in *Leach* that Stephen exercised dominion and control over the PCP found in a closed container on a bedroom dresser in an apartment to which he had ready access, than a rational fact finder may not infer in the present case that Petitioner had dominion and control over the cocaine found in a sealed box in the trunk of a vehicle in which he apparently had limited access and no possessory interest. Having no such interest in the vehicle places Petitioner in a somewhat similar situation to that of the defendant in *Livingston,* for the mere existence of cocaine located in the trunk of Charity's vehicle was not sufficient to prove that Petitioner, a front seat passenger, exercised dominion and control over the contraband. Although Lewis's testimony regarding the air fresheners and the co-defendants's inconsistent stories might form the basis for a strong suspicion as to Petitioner's culpability, the evidence, and reasonable inferences drawn therefrom, does not reach the standard of guilt beyond a reasonable doubt. Without more, we hold that the Petitioner's convictions for importation of cocaine, possession of cocaine, and possession of cocaine with the intent to distribute cannot stand.

### E.

When addressing the elements of conspiracy in *Monoker v. State,* 321 Md. 214, 582 A.2d 525 (1990), we indicated:

Our cases have consistently defined criminal conspiracy as the combination of two or more people to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means. The gist of conspiracy is the unlawful agreement, which need not be spoken or formal so long as there is a meeting of the minds reflecting a unity of purpose and design. The crime is complete when the unlawful agreement is made; no overt act in furtherance of the agreement is necessary.

*Id.,* 321 Md. at 221, 582 A.2d at 528 (citing *Birchead v. State,* 317 Md. 691, 707–08, 566 A.2d 488, 496 (1989); *Townes v.*

*State,* 314 Md. 71, 75, 548 A.2d 832, 834 (1988); *Mason v. State,* 302 Md. 434, 444, 488 A.2d 955, 960 (1985); *Gardner v. State,* 286 Md. 520, 523–24, 408 A.2d 1317, 1319 (1979)); *see also Johnson v. State,* 362 Md. 525, 526–28, 766 A.2d 93, 94 (2001); *Gillespie v. State,* 147 Md. 45, 61, 127 A. 727, 733 (1924).[24]  For the State to prove that Petitioner conspired both to import cocaine and to possess cocaine with the intent to distribute, the State was required to show that Petitioner and Charity had a "meeting of the minds" reflecting their purpose to bring cocaine into Maryland.  Having determined that the State failed to prove beyond a reasonable doubt that Petitioner exercised dominion and control over the cocaine in the trunk of Charity's car, we conclude that the evidence also is insufficient to prove that Petitioner knowingly entered into an unlawful agreement with Charity to import and possess cocaine with an intent to distribute.

## V.

In his brief, Petitioner advances a third issue: whether the trial court erred in failing to strike two jurors for cause. Although this contention was raised before the intermediate

---

24. In *Gillespie v. State,* 147 Md. 45, 127 A. 727 (1924), we made the following observation about the element of knowledge in the crime of conspiracy:

> A conspiracy being unlawful, and every citizen being presumed to know the law, it is unnecessary in an indictment or information charging conspiracy to allege knowledge on the part of the accused of the wrongful character of the act of conspiring and combining; when the combination and the object to be accomplished thereby are alike lawful, but the end is to be attained by unlawful means, it is unnecessary to allege that the accused knew the means to be used to be criminal, because where an act is in its characteristics and quality wrongful knowledge of its character is presumed and need not, therefore, be alleged, except in those cases where the act becomes wrongful and criminal by reason of the presence of accidental or fortuitous features not necessarily attendant upon it, in which case knowledge must be alleged.

147 Md. at 61–62, 127 A. at 733 (internal quotation marks omitted) (quoting Wharton on Criminal Procedure (10th Ed.), para. 517).  The question presented in the present case goes to whether Petitioner knowingly conspired to commit an unlawful act, not whether he knew that the ends and the means of the conspiracy were unlawful.

appellate court, Petitioner did not include it in his petition for writ of certiorari to us. Maryland Rule 8–131(b), governing our scope of review, states:

(b) **In Court of Appeals—Additional limitations.** (1) Prior appellate decision. Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.

In light of Petitioner's failure to raise this issue in his petition for a writ of certiorari as required by Maryland Rule 8–131(b)(1), as well as our decision to reverse this case on another ground, we decline to consider Petitioner's third argument in his brief.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR WICOMICO COUNTY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY WICOMICO COUNTY, MARYLAND.**