991 A.2d 159

**Larry NEAL**

v.

**STATE of Maryland.**

**No. 1118 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

March 25, 2010.

300

Nenutzka C. Villamar (Nancy S. Forster, Public Defender, on the brief), Baltimore, MD, for Appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: WRIGHT, KEHOE, and J. FREDERICK SHARER (retired, specially assigned), JJ.

KEHOE, Judge.

Larry Neal, appellant, was convicted at a bench trial by the Circuit Court for Baltimore County of possession of cocaine with intent to distribute, in violation of MD.CODE ANN.CRIM. LAW § 5–602(2) (2002); possession of cocaine, in violation of Crim. Law § 5–601; possession of a firearm in relation to a drug trafficking crime, in violation of Crim. Law § 5–621(b)(1);

illegal possession of a regulated firearm, *in violation of* MD. CODE ANN. PUB. SAFETY § 5–133(b) (2003); and possession of marijuana, in violation of Crim. Law § 5–601(c)(2).

Appellant presents two issues for our review, which we have reworded:

I.  Did the trial court err in failing to enter judgments of acquittal on charges involving possession of a firearm where there was no evidence that the firearm involved in the crime was operable?

II. Was the evidence sufficient to support a conviction for simple possession and possession with the intent to distribute cocaine?

For the reasons that follow, we shall affirm the judgments below.

## FACTS

Evidence at trial established the following pertinent facts.

Around midnight on April 6, 2007, Officer Jefferson Tufts of the Baltimore County Police Department stopped a white Cadillac for driving 48 miles per hour in a posted 35 mile per hour zone near the intersection of Pine Avenue and Dundalk Avenue. Officer Thomas Huesman assisted in the stop. Appellant was the driver and sole occupant of the car. Officer Tufts approached the driver's side of the car and Officer Huesman approached the passenger's side. Appellant appeared "nervous" but produced his driver's license and the registration without incident. Officer Huesman alerted Officer Tufts to two marijuana "blunts" he observed on the front passenger seat. At Officer Tufts' direction, appellant handed the blunts to him.

Officer Tufts then inquired whether appellant had "anything else in the vehicle [he] needed to know about." Appellant responded in the negative. Next, in the words of Officer Tufts, "I asked [appellant] to exit the vehicle so that we could [conduct a] search." Appellant did not comply. Instead, he immediately sped away, followed by both officers in their

individual patrol cars. Approximately 50 yards into the pursuit, Officer Tufts saw "something [thrown] out the window." The chase lasted no more than a mile before appellant lost control of the car and crashed. Appellant exited the car and continued to flee before being caught by Officer Huesman.

Officer Shawn McElfish arrived shortly after appellant was apprehended. He searched for the discarded item in the roadway area as described by Officer Tufts. He found a handgun. It was loaded with a magazine of six rounds, and one round in the chamber. Two sandwich baggies containing a white substance were found in the interior "console" of the car. The contents of the baggies were later identified as being 19.2 grams and .9 grams of cocaine having a street value of approximately $800. No other contraband was recovered from appellant or the car. According to Detective Hinton Sekou, the State's expert in the sale and use of illegal drugs, the amount of cocaine seized was indicative of possession with an intent to distribute rather than personal use.

After appellant's arrest, Detective Sean Moran interviewed him about the gun. Appellant advised that a "friend" owned the car and provided no identifying information about the "friend." Detective Moran recalled asking appellant whether "we needed to investigate other people if other people were responsible for this firearm." Appellant responded that he would not discuss the gun. His reason, according to the detective, was that to do so would be self-incriminating.[1]

Appellant testified that the gun and cocaine both belonged to the owner of the car, a friend whom he knew only as "Black." According to appellant, he had spent the evening at a party with friends, including Black. The two left the party together with Black driving the car. Appellant stated that when they arrived at Black's home, Black turned the car over to appellant because Black was not up to taking appellant home.

---

1. A weapons check of the gun disclosed no registered owner.

Appellant claimed that when the traffic stop occurred, he called Black with Officer Tuft's permission in order to locate the car's registration. Appellant testified it was during this call to Black that he learned there was a gun under the front driver's seat. Appellant did not state that Black alerted him to the cocaine in the car. Officer Tufts denied that appellant made a telephone call during the stop. Officer Huesman did not recall that appellant made any calls during the stop.

Appellant admitted to discarding the gun and that Officer Tufts "pointed out I had two blunts." He did not dispute that Officer Tufts questioned him as to any other contraband in the car, that he denied the presence of any, or that he sped away after being advised that the car would be searched. Appellant explained that he "panicked" after learning about the gun and fled only because he knew a prior CDS conviction prohibited his ownership or possession of a firearm. Appellant admitted that the gun recovered by Officer McElfish was the same gun that he threw out of the window. Appellant denied any knowledge of the cocaine, and stated that he learned about the cocaine discovered in the console of the car when at the police station. Appellant called no other witnesses.

At sentencing, the court merged the simple possession conviction into the possession of cocaine with intent to distribute conviction and imposed a 20–year term of incarceration thereon, suspending all but 10 years, to be served without the possibility of parole; imposed a five-year term of incarceration to be served without the possibility of parole for the possession of a firearm in relation to a drug trafficking crime conviction, to be served consecutively to the first sentence of incarceration; and suspended any sentence generally as to the other convictions.

We will provide additional facts as necessary.

## DISCUSSION

### I. The Firearm Offenses

Appellant was charged with the violation of three gun-related offenses:

- Wearing, carrying and transporting a handgun without a permit in violation of Crim. Law § 4–203;
- Possessing a firearm in relation to a drug trafficking crime in violation of Crim. Law § 5–621(b)(1); and
- Possessing a regulated firearm by a person previously convicted of a disqualifying crime under Pub. Safety § 5–133(b)(1).

At trial, Officer McElfish described the gun that he recovered as being "a .45 caliber Smith Armory handgun." He testified that he "made it safe" by "unloading the weapon" before "packag[ing] it per County policy." There was no affirmative evidence in the record as to the gun's operability. There was no testimony by any witness as to any examination or test firing of the gun. However, appellant did not dispute that the gun was a real gun and loaded when found. Appellant did not question whether the gun was in good condition, and presented no evidence that the gun showed any signs of disrepair or was not otherwise intact.

At the close of all of the evidence, appellant moved for a judgment of acquittal of all the charges against him. Regarding the gun-related offenses, appellant did not dispute that he possessed the gun or had prior disqualifying convictions. Rather, his argument for acquittal was based solely on the assertion, without citation to authority, that each gun-related offense required proof of the gun's operability and that the State had failed to prove operability.

The State responded that appellant was "correct, [as to] the simple possession of a handgun" under Crim. Law § 4–203 requiring operability, but maintained that a conviction under Pub. Safety § 5–133 and Crim. Law § 5–621(b) did not "require testimony as to the operability." On this point, the State failed to argue that a reasonable fact finder could determine operability from the circumstantial evidence presented in lieu of direct evidence. (e.g. that the gun was loaded and there being no evidence of disrepair). The trial court denied the motion for judgment of acquittal and found appellant not guilty of the handgun offense (Crim. Law 4–203) but

guilty of the firearm drug trafficking and regulated firearm offenses.

Before this Court, appellant contends that the evidence was insufficient to support a conviction under Pub. Safety § 5–133(b)(1) and Crim. Law § 5–621(b)(1) because, in his view, both statutes require proof of operability in order to support a conviction:

> [U]nder [Crim. Law] § 5–621(b) and [Pub. Safety] § 5–133(p) ..., the State bears the burden of proving that the weapon was operable If the Legislature had intended that the terms "firearm" and "regulated firearm" include inoperable firearms, it knew how to make that intention clear.

Appellant points us to Crim. Law § 4–204, which prohibits the use of a handgun in the commission of a crime "whether ... the handgun is operable or inoperable at the time of the crime" as an example of a statute that does not require proof of operability. Since neither Pub. Safety § 5–133(b)(1) nor Crim. Law § 5–621(b)(1) contain similar language, he argues that the State is required to prove operability.

The State responds that the governing statutory definitions of a "firearm" (in Crim. Law § 5–621(b)(1)) and "regulated firearm" (in Pub. Safety § 5–101) are clear and unambiguous and that the plain meaning of neither statute imposes a requirement that a firearm be operable. The State also relies upon established case law defining a firearm as, among other things, a weapon "designed to expel, or may readily be converted to expel" a projectile. The State reasons that "[i]t obviously follows that a weapon that requires conversion to expel" does not suggest a requirement of present operability.

■ We review a trial court's construction and interpretation of a statute *de novo*. We affirm the denial of a motion for acquittal unless we determine that no rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt. *See Gray v. State,* 388 Md. 366, 374–75, 879 A.2d 1064 (2005); *State v. Albrecht,* 336 Md. 475, 479, 649 A.2d 336 (1994) (*quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

### A. *Unlawful Possession of a Regulated Firearm (Pub. Safety § 5–133(b)).*

Appellant's first argument is that the State was required to prove operability of the .45 handgun in order to convict him of violating Pub. Safety § 5–133(b)(1). That statute reads in pertinent part:

**§ 5–133. Restrictions on possession of regulated firearms.**

\* \* \* \*

(b) Possession of regulated firearm prohibited.—A person may not possess a regulated firearm if the person:

(1) has been convicted of a disqualifying crime. . . .

The term "regulated firearm" is not defined in § 5–133 but rather in three subsections of Pub. Safety § 5–101. As in *Hicks v. State,* 189 Md.App. 112, 134–35, 984 A.2d 246 (2009), "we will set them out in reverse order":

(p) *Regulated firearm.*—"Regulated firearm" means:

(1) a handgun; or

(2) a firearm that is any of the following specific assault weapons or their copies, regardless of which company produced and manufactured that assault weapon: [list of assault weapons omitted].

(n) *Handgun.*—

(1) "Handgun" means a firearm with a barrel less than 16 inches in length.

(2) "Handgun" includes a signal, starter, and blank pistols.

(h) *Firearm.*—

(1) "Firearm" means:

(i) a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; or

(ii) the frame or receiver of such a weapon.

(2) "Firearm" includes a starter gun.

■   The resolution of appellant's contentions as to his Pub. Safety § 5–133 conviction is controlled by two recent companion decisions of this Court: *Moore v. State,* 189 Md.App. 90, 110, 983 A.2d 583 (2009) and *Hicks,* 189 Md.App. at 139, 984 A.2d 246.   After reviewing pertinent legislative history and surveying authority from other jurisdictions, we concluded in each case that "in order to obtain a conviction under Pub. Safety § 5–133, the State need not prove that the firearm in question was operable." *Hicks,* 189 Md.App. at 139, 984 A.2d 246; *see also Moore,* 189 Md.App. at 110, 983 A.2d 583.[2]   In effect, we held that the design and construction of a weapon, rather than the state of its operability at the time of the crime, determines whether a weapon is or is not a "firearm" for the purposes of § 5–101 and § 5–133 of the Public Safety Article.

Appellant does not contest that the .45 Smith Armory automatic handgun was a "regulated firearm," nor does he contest that he had previously been convicted of a "qualifying crime," the other statutory predicates for a finding of guilt. Therefore, his conviction for violating Pub. Safety § 5–133(b)(1) will stand.

###   B.   *Possession of a Firearm in Relation to a Drug Trafficking Crime (Crim. Law § 5–621).*

Appellant challenges his conviction for violating Crim. Law § 5–621(b)(1).   The statute reads, in pertinent part, as follows:

   **§ 5–621.   Use of weapon as separate crime.**

                    \* \* \* \*

(b) *Prohibited.*—During and in relation to a drug trafficking crime, a person may not:

   (1) possess a firearm under sufficient circumstances to constitute a nexus to the drug trafficking crime. . . .

Like Pub. Safety § 5–133, Crim. Law § 5–621 does not define "firearm."   However, the succeeding section of the Code does.   Crim. Law § 5–622 makes it unlawful for a

---

**2.**   The opinions in *Moore* and *Hicks* were filed after the parties filed their briefs in this case.

person previously convicted of a CDS felony under Title 5 of the Criminal Law Article to possess, own, carry, or transport a firearm. Specifically, § 5–622 provides:

(a) *"Firearm" defined.*—In this section, "firearm" includes:

(1) a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, and short-barreled rifle, as those words are defined in § 4–201 of this article; [3]

(2) a machine gun, as defined in § 4–401 of this article; and

(3) *a regulated firearm, as defined in § 5–101 of the Public Safety Article.*

(Emphasis added.)

Appellant's argument is based on the premise that the definition of "firearm" contained in § 5–622 should be applicable to the term "firearm" as it is used in § 5–621. Then, focusing solely upon Crim. Law § 5–622(a)'s cross-reference to Crim. Law § 4–201, appellant reasons that: (1) since there "was no evidence that [the weapon in appellant's possession] was one of the types of Springfield Armory firearms" listed in Pub. Safety § 5–101(p)(2); then (2) the firearm in this case would have to qualify as a "handgun" under Crim. Law § 4–201; (3) since operability is required to sustain a conviction under Crim. Law § 4–203 (which incorporates § 4–201's definition of handgun); then (4) the same requirement should be imputed to a prosecution under Crim. Law § 5–621(b)(1). We agree with appellant's initial premise but not his subsequent logic.

Although the predecessors to Crim. Law §§ 5–621 and 5–622 were enacted at a different time than the predecessor to Pub. Safety § 5–133, their respective legislative histories lead us to conclude that they share common purposes and policies and should be read in conjunction.

----

**3.** Relevant to appellant's argument, Crim. Law § 4–201(c) defines a "handgun," in pertinent part, as follows: (1) "Handgun means a pistol, revolver, or other firearm capable of being concealed on the person."

*Crim. Law §§ 5–621 and 5–622.*

Crim. Law § 5–621's predecessor, Art. 27 § 281 A(b), was enacted as part of the Drug Kingpin Act and codified under the sub-heading "Health—Controlled Dangerous Substances." *See* 1989 Md. Laws 2412–13.

"The major objective" of the Drug Kingpin Act was "to reduce the supply of drugs in Maryland by establishing harsher penalties for drug dealers and by decreasing the profitability of participation in a drug trafficking crime." BRIEFING DOCUMENT AND SYNOPSIS OF THE DRUG ENFORCEMENT-DRUG KINGPIN ACT SENATE [BILL] 400/ HOUSE BILL 502. *See also Harris v. State,* 331 Md. 137, 150, 626 A.2d 946 (1993); *Johnson v. State,* 154 Md.App. 286, 305, 839 A.2d 769 (2003). This same briefing document states in pertinent part:

> The use of firearms in connection with drug trafficking crimes is an everyday occurrence.... [T]he combination of dealing drugs and possessing a firearm has become too commonplace.
>
> \* \* \*
>
> The Use or Possession of a Firearm Component. This component recognizes that firearms readily available and that those involved in drug trafficking crimes are quite willing to use those weapons to resolve disputes with their rivals or their customers.
>
> \* \* \*
>
> III.   Use of a Firearm in a Drug Trafficking Crime
>
> 1.   Why is it necessary to establish that *use or possession* of a firearm be a separate offense when Article 27, § 36B, already makes it unlawful to use a handgun in the commission of a felony or crime of violence?
>
> The current statute is restricted to handguns.   The proposed bill would include all firearms.   Many drug dealers are using automatic weapons, assault rifles and other firearms that may not fall within the current definition of a handgun....   The language in this bill prohibits anyone to "use or possess" a firearm during and in relation to a drug trafficking crime.   It would affect an individual who carries

a handgun while dealing drugs, *even though he does not use it.*

(Emphasis added.)

In 1991, the General Assembly amended Article 27's "Health—Controlled Dangerous Substances" subtitle by adding former Art. 27 § 291A, the statutory predecessor to Crim. Law § 5–622. 1991 Md. Laws 3385–86. Section 291A reflected the General Assembly's policy that persons convicted of violating the controlled dangerous substance laws be prohibited from thereafter possessing, owning, carrying, or transporting a firearm. The bill file contains a document titled "Explanation of Floor Amendment to House Bill 978," which states with regard to § 291A:

> Th[e] purpose of this amendment is to remedy a conflict between this bill and a provision of current law [under § 445] that makes it a misdemeanor for a person to possess a pistol or revolver if the person has been convicted of certain controlled dangerous substance offenses.
>
> * * *
>
> This amendment strikes Article 27, 445(c)(1)(iii) [prohibiting, *inter alia,* a person convicted of manufacturing or distributing controlled dangerous substances from possessing a "pistol or revolver"] because it *overlaps* with the provisions of this bill and conflicts with the portion of this bill that makes the *same offense* a <u>felony rather than a misdemeanor.</u>

(Underlined emphasis in original, italicized emphasis added).

The legislative history indicates that the General Assembly intended the term "firearm" to have the same meaning in former Art. 27 §§ 281 A and 291A. *See Kaczorowski v. City of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628 (1987) (When interpreting statutory language "[w]e may and often must consider other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, [and] its relationship to earlier and subsequent legislation. . . ."). We interpret their statutory successors consistently with the

legislative intent and conclude that the term "firearm" has the same meaning in Crim. Law §§ 5–621 and 5–622.[4]

*Pub. Safety § 5–133—The Maryland
Gun Violence Act of 1996.*

Pub. Safety § 5–133 was originally codified as former Art. 27 § 445 and was enacted as part of the Maryland Gun Violence Act of 1996. *See* 1996 Md. Laws 3167–69, 3203–06. One purpose of the Act was "revising, reorganizing, and clarifying certain laws pertaining to the sale, rental, or transfer of certain regulated firearms by certain individuals." *See* 1996 Md. Laws 3140; Senate Floor Report Bill 215.

In enacting § 445, the General Assembly determined that certain persons were unfit to possess firearms, including, *inter alia,* anyone previously convicted of a crime of violence, a felony, or certain misdemeanors. The Maryland Gun Violence Act of 1996 was based in large part upon the federal Gun Control Act of 1968 and utilized much of the same terminology. *Hicks,* 189 Md.App. at 137, 984 A.2d 246. As we explained in *Moore* and *Hicks,* federal courts interpreting the federal law "have consistently held that [the federal statute corresponding to what is now Pub. Safety § 5–133] does not require proof of operability of the firearm." *Moore,* 189 Md.App. at 104, 983 A.2d 583; *see Hicks,* 189 Md.App. at 133, 984 A.2d 246.

The legislative histories of Pub. Safety § 5–101 and § 5–133, on the one hand, and Crim. Law §§ 5–621 and 5–622, on the other, demonstrate that they share common purposes, including proscribing the possession of a firearm by a person

---

4. By chapter 26 of the Acts of 2002, the legislature recodified Article 27(with certain exceptions not relevant to this appeal) as the Criminal Law Article. Section 13 of that statute provided that "it is the intention of the General Assembly that, except as expressly provided in this Act, this Act shall be construed as a nonsubstantive revision, and may not otherwise be construed to render any substantive change in the criminal law of this State." 2002 Md. Laws 1096. There is no indication in chapter 26 that the legislature intended to alter the substance of either former Art. 27 §§ 281A and 291A.

in connection with a drug transaction or who had previously been convicted of various criminal offenses, including drug distribution.

Pub. Safety § 5–101 is the only criminal statute in which the General Assembly has provided a descriptive (versus an inclusive) definition of the term "firearm." [5]   That definition is expressly cross-referenced within the meaning of "firearm" under Crim. Law § 5–622(a), and we accordingly read Pub. Safety § 5–101 in *pari materia* with Crim. Law § 5–621(b)(1) and § 5–622, in order to give the term consistent meaning.

In *Hicks* and *Moore*, we concluded that the definition of "firearm" in Pub. Safety § 5–101 does not include the concept of operability.   Logic dictates that we apply the same construction to the term "firearm" as it is used in Crim. Law § 5–621 and § 5–622.   Hence, we hold that, in order to obtain a conviction under Crim. Law 5–621(b), the State need not prove that the firearm in question was operable.

## II.   The CDS Convictions.

The sole issue presented by appellant's remaining contention is whether the evidence was sufficient to support the trial court's finding that appellant was in possession of, and with the intent to distribute, the 20.1 total grams of cocaine found in the car he was driving.

Appellant asserts that the evidence was legally insufficient for two reasons.   First, he submits that there was insufficient evidence "to show, or from which to infer," that he knowingly possessed the cocaine.   Appellant emphasizes that the evidence failed to show "where exactly" the cocaine was found in the car or whether they were accessible or in his plain view.

---

5.   Although seven sections of the Criminal Law Article reference the term "firearm", none provides an express definition of the term.   *See* Crim. Law §§ 4–104 (Child's access to firearms); 4–201 (Definitions under the handguns statutes); 4–203 (Wearing, carrying, or transporting a handgun); 4–204 (Use of handgun or antique firearm in commission of crime); 4–208 (Possession of firearm at public demonstration); 5–621 (Use or weapon as separate crime) and 5–622 (Firearm crimes).

Second, appellant argues that the State did not prove that he "exercised dominion and control over the [cocaine] found in the car." Appellant stresses that he did not have a possessory or ownership interest in the car and that the evidence failed to show who "actually owned the car."

The State responds that the evidence was sufficient to support a reasonable finding, beyond a reasonable doubt, that appellant knowingly possessed the cocaine and was in actual or constructive possession of it. We agree.

The standard for our review of the sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see White v. State*, 363 Md. 150, 162, 767 A.2d 855 (2001). We defer to the fact finder's "opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence...." *Sparkman v. State*, 184 Md.App. 716, 740, 968 A.2d 162, *cert. denied,* 410 Md. 166, 978 A.2d 246 (2009); *Pinkney v. State*, 151 Md.App. 311, 329, 827 A.2d 124, *cert. denied,* 377 Md. 276, 833 A.2d 32 (2003). While we do not re-weigh the evidence, "we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *White,* 363 Md. at 162, 767 A.2d 855.

The same review standard applies to all criminal cases, including those resting upon circumstantial evidence, since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts. *See Pinkney,* 151 Md. App. at 327, 827 A.2d 124; *Eiland v. State,* 92 Md.App. 56, 69, 607 A.2d 42 (1992), *rev'd on other grounds,* 330 Md. 261, 623 A.2d 648 (1993). "Circumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could

be convinced beyond a reasonable doubt of the guilt of the accused." *Hall v. State,* 119 Md.App. 377, 393, 705 A.2d 50 (1998).

Furthermore, the fact finder, not the appellate court, resolves conflicting evidentiary inferences. "The primary appellate function in respect to evidentiary inferences is to determine whether the trial court made reasonable, *i.e.,* rational, inferences from extant facts. Generally, if there are evidentiary facts sufficiently supporting the inference made by the trial court, the appellate court defers to the fact-finder...." *State v. Smith,* 374 Md. 527, 547, 823 A.2d 664 (2003).

In support of his argument, appellant refers this Court to four cases: *State v. Suddith,* 379 Md. 425, 428, 842 A.2d 716 (2004) (defendant was one of three passengers in vehicle where CDS was found); *White v. State,* 363 Md. 150, 159, 767 A.2d 855 (2001) (defendant was only passenger and cocaine was found in a sealed box in the trunk of car driven by another); *Larocca v. State,* 164 Md.App. 460, 465–66, 883 A.2d 986 (2005) (defendant was one of two passengers and marijuana was found under the front seat); and, *Folk v. State,* 11 Md.App. 508, 511, 275 A.2d 184 (1971) (defendant was one of six passengers where police witnessed another passenger discard marijuana from vehicle). In all of these cases, the defendant was a passenger with at least one other occupant in a vehicle and the issue as to the possession of contraband seized from the vehicle was in the context of joint or constructive possession. Based upon these "passenger" cases, appellant concludes: "At most, the evidence established that [appellant] was a recent occupant of a car involved in suspicious activity which contained [cocaine] in some unspecified place in the vehicle." These cases are factually inapposite and are of no assistance to appellant.

Crim. Law § 5–601 prohibits the possession of controlled dangerous substances (which, under Crim. Law § 5–403(b)(3)(iv), includes cocaine). Crim. Law § 5–602 prohibits the possession of CDS with the intent to distribute. Crim. Law § 5–101(u) defines "possess" to mean "to exercise

actual or constructive dominion or control over a thing by one or more persons." A conviction for possession of cocaine may rest upon either actual or constructive possession. *Suddith,* 379 Md. at 431–32, 842 A.2d 716. A person has constructive possession over contraband when he or she has dominion or control over the contraband itself or over the premises or vehicle in which it was concealed. *Smith,* 374 Md. at 553, 557, 823 A.2d 664. Furthermore, although appellant complains that the State did not prove who "actually owned" the car (which, we observe, did not thereby affirmatively exclude him), a legal possessory or ownership interest in the premises or vehicle is not necessary or dispositive as to the issue of dominion and control. *Handy v. State,* 175 Md.App. 538, 571, 930 A.2d 1111 (2007).

Because a person "ordinarily would not be deemed to exercise 'dominion or control' over an object about which he is unaware," knowledge of the contraband's presence is a prerequisite to the exercise of dominion and control. *Dawkins v. State,* 313 Md. 638, 649, 547 A.2d 1041 (1988). *See Suddith,* 379 Md. at 432, 842 A.2d 716 (A person's "knowledge of the contraband is a key element in finding [a person] guilty of possessi[on]. . . ."). Accordingly, in order to obtain a conviction for possession of illegal drugs, the State must show by direct or circumstantial evidence that the defendant knew of both "the presence and the general character or illicit nature." *Dawkins,* 313 Md. at 651, 547 A.2d 1041. Thus, the sufficiency issue here boils down to whether the trier of fact could reasonably infer that appellant knew of the presence of the cocaine.

The Court of Appeals has recognized that "[d]rivers generally have dominion and control over the vehicles they drive." *Smith,* 374 Md. at 553, 823 A.2d 664 (citation omitted). In that opinion, after reviewing of the evidence [6] and emphasizing

---

**6.** The defendant in *Smith* was the driver of a rented vehicle. A search of the vehicle resulting from a traffic stop recovered a gun found in the trunk of the car under a jacket belonging to one of the two passengers

a fact finder's prerogative to choose among differing inferences, along with the deference that must be given in that regard, the Court concluded:

> We hold that the status of a person in a vehicle who is the driver, whether that person actually owns, is merely the driver or is the lessee of the vehicle, permits an inference, by a fact-finder, of knowledge, by that person, of contraband found in that vehicle. In other words, the knowledge of the contents of the vehicle can be imputed to the driver of the vehicle. That inference in the case *sub judice,* based upon the direct and circumstantial evidence presented, would permit a fact-finder to be convinced beyond a reasonable doubt that respondent had knowledge of the [contraband] in the vehicle.

374 Md. at 550, 823 A.2d 664. *Accord Sellman v. State,* 152 Md.App. 1, 31, 828 A.2d 803 (2003) (citing to *Smith* and stating that "reasonable fact-finder . . . reasonably could infer that as the driver and sole occupant of the vehicle . . . [defendant] not only knew of [the] existence [of the illegal drugs found in the vehicle after the traffic stop] but was exercising dominion and control over it by transporting it.")

██ While a fact finder could infer that appellant possessed the cocaine simply by virtue of his status as the driver and sole occupant of the vehicle, there was additional evidence, based upon reasonable inferences, of appellant's knowledge, dominion, and control over the cocaine. "There are few facts, including even ultimate facts, that cannot be established by inference." *Moore v. State,* 73 Md.App. 36, 45, 533 A.2d 1 (1987). "[A]n inference is valid if the inferred fact is more likely than not to be true if the basic fact is true, or there is a rational connection between the basic and the inferred facts.[1]" L. McLain, Maryland Evidence, § 301.4 at 427 (2d Ed. 2001) (footnote omitted).

---

also in the car at the time of the stop. All denied knowledge or ownership of the gun. *Id.* at 531–33, 823 A.2d 664.

An inference " 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Smith,* 374 Md. at 539, 823 A.2d 664 (citation omitted). Fact finders "routinely apply their common sense, powers of logic and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts." *Robinson v. State,* 315 Md. 309, 318, 554 A.2d 395 (1989). Finally, to the extent that conflicting inferences are possible from the evidence, " 'it is for the fact finder to resolve the conflict. The possibility of raising conflicting inferences from the evidence does not preclude allowing the fact finder to determine where the truth lies.' " *Smith,* 374 Md. at 539–40, 823 A.2d 664 (quoting *Commonwealth v. Russell,* 46 Mass.App.Ct. 307, 309, 310, 705 N.E.2d 1144 (1999)).

The evidence in support of an inference that appellant exercised knowledge, dominion and control over the cocaine included: 1) that appellant was the driver and sole occupant of the vehicle when stopped by the police; 2) that appellant was "nervous" when the officers approached the vehicle; 3) that when the officers advised appellant they were going to search the vehicle, he fled; 4) and that a loaded gun and other drugs, suggesting a relationship to the cocaine, were also in the vehicle at the time of the traffic stop. *See Henderson v. State,* 183 Md.App. 86, 102, 960 A.2d 627 (2008) (stating "it is a commonplace observation that firearms are tools of the drug trade."); *Burns v. State,* 149 Md.App. 526, 542, 817 A.2d 885 (2003).

The fact finder could properly infer that appellant was in possession of the cocaine. Appellant's version does little to dispel the inference of his knowledge and control. According to appellant, someone, known to appellant only as "Black," lent him an automobile with a handgun and $800 of cocaine secreted within it. Appellant testified that Black told him of the handgun, but not the cocaine, and he fled to avoid the search and discovery of the gun alone. Witness credibility is not ours to decide, but lies solely within the purview of the fact finder. *See State v. Raines,* 326 Md. 582, 590, 606 A.2d

265 (1992). A fact finder is "free to accept the evidence that it believes and reject that which it does not believe." *Snyder v. State,* 104 Md.App. 533, 549–50, 657 A.2d 342, *cert. denied,* 340 Md. 216, 665 A.2d 1058 (1995).

In our view, taken as a whole, the evidence was sufficient to support a conclusion by a reasonable fact finder that appellant knowingly possessed, with an intent to distribute, the cocaine hidden in the automobile.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**