828 A.2d 803

**Marvin Leonard SELLMAN**

v.

**STATE of Maryland.**

No. 1627, Sept. Term, 2002.

Court of Special Appeals of Maryland.

July 7, 2003.

4

Carrie Leonetti, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Appellant.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Appellee.

Argued before SALMON, SONNER and DEBORAH S. EYLER, JJ.

DEBORAH S. EYLER, Judge.

In a bench trial, the Circuit Court for Anne Arundel County convicted Marvin Leonard Sellman, the appellant, of possession of a controlled dangerous substance and driving on a revoked license. The court sentenced the appellant to one year in prison for the possession conviction and six months in prison for the driving on a revoked license conviction, to be served consecutively.

On appeal, the appellant asks two questions, which we have shortened:

I. Did the trial court err in denying his motion to suppress evidence?

II. Was the evidence sufficient to support his possession conviction?

For the following reasons, we answer the first question "yes," and therefore shall reverse the appellant's conviction for possession of a controlled dangerous substance. We answer the second question "yes" as well. Accordingly, we shall remand the case to the circuit court for further proceedings not inconsistent with this opinion.

## FACTS AND PROCEEDINGS

On December 19, 2001, at 12:30 a.m., Anne Arundel County Police Officer Robert Novotny was on patrol on Route 198 in Anne Arundel County when he spotted a Mercury Tracer "hatchback" vehicle with blue front signal lights and a cracked windshield, both in violation of the Maryland Transportation Code. The officer activated his cruiser's emergency lights to make a traffic stop. The driver complied, pulling the Tracer into the lighted parking lot of a service station.

Officer Novotny approached the Tracer, saw that the appellant was its sole occupant, and asked him to produce his driver's license and the vehicle's registration. The appellant produced a Maryland identification card and told the officer that his driver's license was suspended. The appellant also told Officer Novotny that he did not know where the vehicle registration was because the Tracer belonged to his cousin.

Officer Novotny returned to his cruiser and ran a Motor Vehicle Administration ("MVA") check of the appellant's driving record, which showed that his driver's license had been suspended in 1992 and revoked in 1993, and remained revoked. The officer also ran an MVA check on the status of the Tracer and its registration tags and learned that there was an outstanding "pickup order" for the car and an order to secure the tags, which were expired. In addition, Officer Novotny determined that the owner of the Tracer was one Travis Delante Bryant of Upper Marlboro.

After obtaining that information, Officer Novotny placed the appellant under arrest for driving while revoked. He performed a pat-down of the appellant's person, which revealed

nothing, and then placed him in the front passenger seat of the police cruiser with the seat belt buckled around him.

Officer Novotny called for a tow truck. He then proceeded to search the Tracer. In a red nylon bag in the hatchback area of the vehicle, the officer found a handgun and a glassine bag containing a green substance, later identified as 24.34 grams of marijuana.

The appellant was charged with transporting a handgun, possession of a controlled dangerous substance (marijuana), driving while suspended, and driving while revoked. The court granted the appellant's motion for judgment of acquittal on the driving while suspended charge and found the appellant not guilty of transporting a handgun. As noted above, the court found the appellant guilty of possession of marijuana and driving while revoked.

Additional facts will be included in our discussion of the issues.

## DISCUSSION

### I.

The appellant contends that the trial court erred in denying his motion to suppress from evidence the marijuana Officer Novotny found in the red nylon bag in the hatchback area of the Tracer. He maintains that the search of the Tracer and seizure of the contraband violated his rights under the Fourth Amendment to the United States Constitution; and therefore the contraband should have been excluded from evidence. *See Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (holding that Fourth Amendment and exclusionary rule is applicable to the States under the Fourteenth Amendment).

■ Ordinarily, in an appeal from the denial of a motion to suppress evidence on Fourth Amendment grounds, we look only to the evidence adduced at the suppression hearing. *Cartnail v. State,* 359 Md. 272, 282, 753 A.2d 519 (2000). In this case, there was no suppression hearing. Instead, the court made the suppression ruling during the bench trial.

When the prosecutor was questioning Officer Novotny, the State's first witness, and asked what he found in the course of searching the Tracer, defense counsel objected. The court asked whether the objection was based on a search and seizure question. Defense counsel answered that it was. The court and counsel then agreed that the court would rule on the suppression objection at the end of Officer Novotny's testimony. Accordingly, the evidence pertinent to the suppression ruling in this case is the testimony of Officer Novotny at trial. ·

Officer Novotny testified that he learned from the MVA check that the tags on the Tracer were no longer in effect and "there was an outstanding pickup order, and an investigation to secure those tags." After arresting the appellant for driving while revoked and placing him in the police cruiser, Officer Novotny called for a tow truck and then "proceeded to conduct a search of the vehicle, prior to having it towed." By then, Officer Kelly Harding, also of the Anne Arundel County Police Department, had arrived on the scene. She stood by the cruiser while Officer Novotny undertook the search.

Officer Novotny testified that he searched the automobile by beginning at the front and working his way to the back. He explained that he "always start[s] at the front of the vehicle around the driver's seat; that's just my habit...." When his search reached the back of the vehicle, he used the key from the ignition to unlock and open the hatchback door. The inside of the hatchback consisted of a "small lid-type structure overtop of a compartment." Officer Novotny lifted the lid-type structure and saw inside the compartment a red nylon bag bearing the word "Marlborough" [sic]. He opened the uppermost, small section of the red bag and saw a glassine baggie containing greenish vegetable matter, which he recognized to be marijuana. He then opened the bottommost, large section of the red bag and found a silver revolver with black duct tape on it.

When in response to questions by the prosecutor Officer Novotny began to describe other items he found in the "Marlborough" bag, including a pair of shorts and ski masks, the

defense lodged objections on the ground that the other items were not relevant, and the objections were sustained.

Officer Novotny testified on cross-examination that he performed an inventory of the contents of the Tracer, which "would have been on [his] tow slip[,]" and that the inventory would have included the contents of the passenger compartment of the vehicle. He stated that he did not give the appellant a copy of the inventory, however. Also, in response to questions by defense counsel asking if he recalled whether there were packages on the front seat of the car, Officer Novotny testified that he did not recall.

At the conclusion of Officer Novotny's testimony, the court heard argument of counsel on the suppression motion. Defense counsel argued that the search was not a constitutionally permissible search of a vehicle incident to arrest, under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), because the hatchback compartment was not part of the passenger compartment of the car; rather, it was akin to a car trunk.

The prosecutor responded by saying that even if the court were not inclined to find that the search was a proper search incident to arrest, "the stronger argument . . . is that [the car] had to be towed" because of the expired tags and that the search was proper as an inventory search. When the court questioned the prosecutor about Officer Novotny's not having produced the inventory, the following colloquy took place:

[PROSECUTOR]: [Officer Novotny] testified that he did do the inventory. [The State is] not obligated to give you the inventory slip in order to prove that he did an inventory, unless they want to somehow suggest that he didn't. I didn't understand that to be the argument. But the car was in fact towed. We certainly can put into evidence the tow slip, which moved it. I didn't consider that an issue, but I am happy to recall him and put that into evidence, because I do have it.

But the car was towed, and in order to have it towed, they had to do an inventory search of it.

THE COURT: Right.

[PROSECUTOR]: So, I think that is certainly consistent. It would be a different story, I agree with Your Honor, if we couldn't show the car had been towed, and it sat on the side of the road; it wouldn't make any sense that he did an inventory slip. But if he is going to have it towed, under the County rules they wouldn't have been able to tow it without him giving them the inventory slip.

So, he testified it was towed. It was in fact towed. I would argue that obviously at an inventory search they would have to search all of it anyway, and that it would have been acceptable under an inventory search.

Defense counsel responded that he "agree[d] with [the prosecutor] that the evidence is clear that the vehicle was going to be towed, and that that would have provided justification to do an inventory search." He argued, nevertheless, that the "question in this case is whether an inventory search really was conducted." Defense counsel acknowledged the officer's testimony that he performed an inventory and stated he had no "reason to doubt [the officer's] word that he considered what he was doing as an inventory search." He pointed out, however, that Officer Novotny's search ceased when he found the contraband and that he did not give the appellant a copy of an inventory. Defense counsel further stated: "I think we've got justification for an inventory, but the burden is on the State to show that it [the inventory search] is pursuant to some general administrative procedure in that regard." He summarized his argument as follows:

So that my argument in this case would be, certainly there is justification for an inventory. The officer has told you that he did an inventory. But there is no evidence regarding procedure. Now again, I am sure counsel is correct that the County has a procedure for inventorying vehicles. We don't have any evidence in this case that that was filed, though. And I would say that the evidence suggests that when incriminating evidence was found here, the inventory stopped. There is absolutely nothing to suggest that the legitimate purposes of doing the inventory—at

least a safe-keeping function—that there was any effort made to fulfill that.

The prosecutor replied by emphasizing that the evidence was *not* that Officer Novotny went straight to the hatchback area of the car, searched, found contraband, and stopped, but that he began to search from the front of the car, worked his way to the rear, and eventually came upon the contraband in the last area of the car that he searched, at which point he stopped, because the search was completed.

The court found that the search of the Tracer was a valid inventory search that did not violate the appellant's Fourth Amendment rights, and denied the motion to suppress on that basis. It ruled:

> Sir, I am going to deny the motion, because I do believe that it is a valid stop and approach of your client. Once [Officer Novotny] approached your client, he did learn that he was suspended. He also learned, prior to saying that he wanted a tow truck to arrive, that the tags were the wrong tags for the vehicle. And I think that would give him every reason to sequester the automobile and have an inventory before the tow truck arrived, and I think he sufficiently described that procedure as what he used.
>
> He did say—I had in my notes that he went from the front of the car to the back, inventorying the items in the car. And I think that the inventory search is really a valid justification for the search. So, I am going to deny your motion.

The appellant argues that the absence of evidence at trial that Anne Arundel County has standardized rules or procedures authorizing and regulating inventory searches of vehicles and that Officer Novotny conducted the search of the Tracer pursuant to any such rules and regulations was fatal to the State's argument that the search was a constitutionally permissible inventory search. The State responds that the appellant waived for appellate review his argument that the search violated his Fourth Amendment rights; and that his argument lacks merit in any event. The State also argues

that the search was a valid search incident to arrest under *New York v. Belton, supra,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, and should be upheld on that basis even if it is not upheld as a valid inventory search. In his reply brief, the appellant argues that the State waived the *Belton* issue and that it is otherwise non-meritorious.

### *Waiver By the Appellant*

The following facts are relevant to the State's waiver argument.

On March 6, 2002, the appellant's public defender filed an "Omnibus Motion Entry of Appearance Request for Chemist." The motion stated that the

entry of appearance shall be deemed to incorporate by reference and include the filing of the Defendant's Request for Discovery and Motion to Produce Documents, the Motion to Suppress Evidence and Motions pursuant to Maryland Rule 4–252, copies of which are on file with the Clerk of the Court and the Office of the State's Attorney, as if such Request and Motions were filed in full in this case.

Less than two weeks later, a prosecutor in the Anne Arundel County State's Attorney's Office wrote to the appellant's public defender stating, *inter alia:* "I note you have filed certain motions pursuant to Rule 4–252. I am assuming that, at this point in time, you do not wish a hearing on these motions. If that is incorrect, please contact me and I will set them in for a hearing prior to trial." The next day, the prosecutor filed an "Answer to Motion to Suppress," which said: "[A]ll evidence in the above-captioned case was lawfully obtained under the United States Constitution and Constitution of Maryland."

Apparently, the appellant's public defender did not respond to the prosecutor's letter and made no effort to schedule a pre-trial suppression hearing.

On July 25, 2002, a private lawyer entered his appearance on the appellant's behalf, replacing his public defender coun-

sel. At that time, trial was scheduled for August 1, 2002. The trial went forward as scheduled without a pre-trial suppression hearing's having been requested or held.

The question whether the search of the Tracer was in violation of the appellant's Fourth Amendment rights first was raised at trial, during the direct examination of Officer Novotny. When the officer was asked to describe what he had found in the search of the Tracer, defense counsel objected, without specifying any grounds. The following ensued:

> THE COURT: Okay. Are you preserving that, sir? Are you objecting because you think there is a search and seizure issue?
>
> [DEFENSE COUNSEL]: I think that there is a search and seizure issue, Your Honor. And frankly, I just entered my appearance last week, but I understand the motions were filed in a timely manner.
>
> THE COURT: Okay. All right.
>
> [DEFENSE COUNSEL]: It hadn't been litigated yet—
>
> THE COURT: All right. That will be preserved, sir. I will consider that when we hear what it is.

The State maintains that the appellant waived his Fourth Amendment search and seizure argument by not requesting a suppression hearing before trial, under Rule 4–252. After citing cases addressing waiver by failing to file a mandatory motion under that rule, the State argues that, notwithstanding that the court ruled on the suppression motion, "there was no specific finding of good cause to excuse [the appellant's] belated motion to suppress[,]" and therefore the issue was not preserved for review.

Rule 4–252(a) provides that certain "mandatory motions," including a motion raising an unlawful search and seizure, "shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise." Subsection (b) of the Rule requires that such mandatory motions be filed with certain specified time frames. Subsection (c) further provides that a mandatory motion shall be in writing unless the court otherwise directs

and shall state the grounds on which it is made and the relief sought, and shall contain a statement of points and authorities.

Subsection (g) of Rule 4–252, entitled "Determination," states: "Generally. Motions filed pursuant to this Rule shall be determined before trial and, to the extent practicable, before the day of trial. . . ."

In this case, the mandatory motion to suppress evidence on the basis of an illegal search and seizure was filed by the appellant, and was timely filed. Accordingly, the waiver provision of subsection (a) of the Rule is not applicable. To be sure, the motion was not heard by the court before trial. Subsection (g) of the Rule does not contain a waiver provision, however. To the contrary, by the use of the word "[g]enerally," the Rule takes into account that the court sometimes will not rule on a mandatory motion before trial. The appellant's failure to request a suppression hearing before trial did not effect an automatic waiver of the suppression issue, as the State suggests.

Moreover, the question whether the appellant waived the suppression issue for review by not showing good cause to explain why he did not request a pre-trial suppression hearing was itself not preserved by the State. When the appellant's trial counsel objected and moved to suppress during Officer Novotny's testimony, the State did not respond by raising the issue of the appellant's not having requested a pre-trial motion to suppress. Nor was the issue raised by the State during the argument on the motion to suppress. The argument was not made at all, and therefore cannot be raised for the first time on appeal. Rule 8–131(a).

### *Standard of Review*

In considering the evidence on which a suppression motion is based, we extend great deference to the judge's fact-finding, determinations about witness credibility, and weighing of the evidence. *In re Tariq A–R–Y,* 347 Md. 484, 488–89, 701 A.2d 691 (1997), *cert. denied,* 522 U.S. 1140, 118 S.Ct. 1105, 140 L.Ed.2d 158 (1998); *Farewell v. State,* 150 Md.App. 540,

562 n. 5, 822 A.2d 513, No. 2958, Sept. Term, 2000 (2003). When there is conflicting evidence, we accept the factual findings of the motion judge unless they are clearly erroneous. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990), *overruled in part on other grounds, Wengert v. State,* 364 Md. 76, 771 A.2d 389 (2001). We view the evidence in the light most favorable to the prevailing party. *State v. Rucker,* 374 Md. 199, 821 A.2d 439 (No. 28, Sept. Term 2003). With respect to the ultimate determination whether there has been a constitutional violation, we make our own independent appraisal by reviewing the law and applying it to the facts of the case. *Id.; Carter v. State,* 367 Md. 447, 457, 788 A.2d 646 (2002).

### *Inventory Search*

The Fourth Amendment to the United States Constitution prohibits, *inter alia,* unreasonable searches and seizures by government officers.[1] Warrantless searches are presumed to be unreasonable, with several well-recognized exceptions. *United States v. Karo,* 468 U.S. 705, 717, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). *See, e.g., United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (automobile exception to the warrant requirement); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (consent as an exception); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (exigent circumstances as an exception). One of those, the "inventory search," was recognized by the Supreme Court in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

In *Opperman,* the defendant's automobile was towed and impounded by the police pursuant to a municipal ordinance authorizing confiscation of vehicles having multiple parking violations. A police officer, following procedures established by the police department, conducted an inventory search of

---

1. The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

the impounded car, and found a baggie of marijuana in the glove compartment. The defendant was charged with possession of a controlled dangerous substance. He moved to suppress the marijuana from evidence on the ground that it was obtained in violation of his Fourth Amendment rights.

The Supreme Court held that the warrantless inventory search of the impounded automobile was reasonable and therefore did not violate the Fourth Amendment. The Court explained that when automobiles are taken into the custody of local police departments, in furtherance of their community caretaking functions, the departments ordinarily follow "a routine practice of securing and inventorying the automobiles' contents[,]" to protect the police against claims or disputes over lost or stolen property and from danger; and that in applying the Fourth Amendment reasonableness standard in prior opinions, the Court "ha[d] consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." *South Dakota v. Opperman, supra,* 428 U.S. at 373, 96 S.Ct. 3092. The Court upheld the search as a reasonable intrusion, concluding that, under the facts and circumstances of the case, the police were "indisputably engaged in a caretaking search of a lawfully impounded automobile[,]" with no suggestion that the standard police procedure they were following "was a pretext concealing an investigatory police motive." *Id.* at 375–76, 96 S.Ct. 3092.

In *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), the Court applied the inventory search exception outside the context of an automobile search. The defendant was arrested for disturbing the peace and was taken to the police station. The police department had a routine booking procedure that required officers to inventory "everything" in the possession of an arrested person. *Id.* at 648, 103 S.Ct. 2605. Pursuant to that procedure, an officer emptied the contents of the defendant's shoulder bag and discovered illegal drugs. In defending the resulting drug possession charges, the defendant argued that the search of

his shoulder bag violated his Fourth Amendment rights. Ultimately, the Supreme Court rejected that argument, holding that it is reasonable for the police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at the police station incident to booking and jailing the suspect.

The Court returned to the automobile context when it addressed inventory searches of closed containers, in *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The defendant was arrested for driving while intoxicated. After the arrest but before a tow truck arrived to transport his van to the police impound lot, the arresting officer searched the van, "in accordance with local police procedures, which require[d] a detailed inspection and inventory of impounded vehicles." *Id.* at 369, 107 S.Ct. 738. The officer discovered a closed backpack located directly behind the front seat of the van. He looked inside the backpack and found a nylon bag containing canisters that contained illegal drugs, drug paraphernalia, and a large sum of cash. The defendant was charged with drug related offenses.

The defendant challenged the constitutional validity of the search on the ground that the search of the closed backpack exceeded the scope of a permissible inventory search. The Supreme Court of Colorado, relying not on inventory search cases but on investigatory search cases holding that searches of trunks and suitcases must be supported by probable cause, held the search unconstitutional.

The United States Supreme Court reversed. It distinguished inventory searches, which are routine, non-criminal procedures that concern police community caretaking functions and are meant to protect impounded property from harm and the police from claims and disputes over the property, from investigatory searches, which are concerned with probing criminal conduct, and therefore implicate the probable cause and warrant requirements of the Fourth Amendment. *Id.* at 371–72, 107 S.Ct. 738. The Court held that "reasonable police regulations relating to inventory procedures administered in

good faith satisfy the Fourth Amendment." *Id.* at 374, 107 S.Ct. 738. In a footnote, the Court emphasized that the trial court found that the police department's procedures mandated the opening of closed containers and the listing of their contents, and the Court's decisions "ha[d] always adhered to the requirement that inventories be conducted according to standardized criteria." *Id.* at 374 n. 6, 107 S.Ct. 738.

The Court's footnote in *Bertine* was a focus of discussion in *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), in which it held a search of an automobile was not a valid inventory search. In *Wells*, the defendant's car was impounded after he was arrested for driving under the influence. The defendant gave the Florida State Highway Patrol trooper who arrested him permission to search the trunk of the impounded car. At the impoundment lot, an inventory search was conducted and revealed two marijuana cigarettes in an ashtray and a locked suitcase in the trunk. Under the trooper's direction, the suitcase was opened. It contained a garbage bag holding a large quantity of marijuana. The defendant was charged with possessing illegal drugs.

The defendant challenged the search on the ground that it violated the Fourth Amendment. At the suppression hearing, the State characterized the search as an inventory search, but did not introduce any evidence that the search was conducted in accordance with any standardized inventory procedure. The State did not introduce an inventory sheet and the officer did not testify that he actually inventoried the items in the car.

The motion court denied the motion to suppress, and the defendant ultimately was convicted of the drug possession charge. On appeal before the Florida Supreme Court, the Florida State Highway Patrol filed an *amicus* brief asserting that the "Florida Highway Patrol Forms and Procedural Manual" contained the standard policy governing the search in this case. The Supreme Court of Florida held that the search was not conducted pursuant to the standard policy, however, because the policy did not provide any direction about opening closed containers. When the case was argued before the

United States Supreme Court, the State conceded that the policy manual was not in effect at the time of the search. It argued, however, that the officer had performed the search in accordance with standard operating procedures that later were incorporated in the manual. Yet, the officer had not testified at the suppression hearing that he had conducted the search in accordance with any standard operating procedures.

The Court held that, in the absence of any policy respecting the opening of closed containers encountered in the course of an inventory search, the "search was not sufficiently regulated to satisfy the Fourth Amendment," and the marijuana therefore should have been suppressed from evidence. The Court also rejected the Florida Supreme Court's suggestion, based on the *Bertine* footnote, that any such policy only would be proper if it gave no discretion to police officers as to whether to search a closed container. The Court held that a standard inventory policy could give law enforcement officers some leeway to decide which closed containers should and should not be searched.

In a concurring opinion, Justice Brennan argued against that point, stating that the Court's inventory search cases "clearly hold that an inventory search is reasonable under the Fourth Amendment only if it is done in accordance with standard procedures that *limit* the discretion of the police." *Florida v. Wells, supra*, 495 U.S. at 8, 110 S.Ct. 1632. In another concurring opinion, Justice Blackmun, after commenting that "[i]f [the Supreme Court's] cases establish anything, it is that an individual police officer cannot be given complete discretion in choosing whether to search or to leave undisturbed containers and other items encountered during an inventory search[,]" *id.* at 10, 110 S.Ct. 1632, criticized the majority for saying not just that a law enforcement agency has discretion to choose a particular scheme for carrying out inventory searches but that individual police officers may be afforded discretion in conducting inventory searches. *Id.* at 11, 110 S.Ct. 1632. In a third concurring opinion, Justice Stevens remarked:

While purportedly reaffirming the requirement of "standard criteria" to control police discretion in conducting inventory searches, *see Colorado v. Bertine*, [*supra*], the [majority] invites the State to allow their officers discretion to open— or not to open—"closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors." [495 U.S.] at 4[, 110 S.Ct. 1632]. Thus, luggage, briefcases, handbags, brown paper bags, violin cases—indeed, virtually all containers except goldfish bowls—could be opened at the whim of the officer, whether locked or unlocked. What is left for the "standard criteria"?

*Florida v. Wells, supra*, 495 U.S. at 12, 110 S.Ct. 1632.

Finally, the Supreme Court touched upon the inventory search exception to the Fourth Amendment in *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), in which it held that, when a police officer has probable cause to seize a person for violating the traffic laws, the seizure does not violate the Fourth Amendment just because it may be a pretext to accomplish some other law enforcement objective. In rejecting the defendant's argument that the subjective motivations of the arresting police officer should control the validity of the arrest, the Court distinguished searches and seizures based on probable cause`from those conducted under the inventory exception to the Fourth Amendment. It explained that police motives have relevance when a search is allegedly based on the inventory search exception because inventory searches are allowed in the absence of probable cause for the limited purpose of permitting the police to carry out important non-investigatory caretaking functions. The exception does not apply, however, when the inventory search is used by a police officer as " 'a ruse for a general rummaging in order to discover incriminating evidence.' " *Id.* at 811, 116 S.Ct. 1769 (quoting *Wells, supra*, 495 U.S. at 4, 110 S.Ct. 1632).

We conclude from our review of the guiding Supreme Court cases that the evidence presented by the State, through the testimony of Officer Novotny, was legally insuffi-

cient to permit a finding by the trial court that the search in this case was a permissible intrusion under the inventory search exception to the Fourth Amendment. The inventory search exception to the warrant requirement is narrow; it exists solely to protect property in lawful government custody and to protect police departments from claims and disputes over such property. The exception is limited so that it will serve those interests but will not be misused, *i.e.*, used so as to allow officers whose actual motivations are to search for investigatory purposes to do so on the pretext of conducting an inventory search. The Supreme Court cases make clear that to ensure that ulterior investigatory motives are not at play an inventory search must at a bare minimum be a search of lawfully detained property carried out by a police officer in accordance with standard policies established by the officer's law enforcement agency. Without the existence of a standard policy, an officer's actions in conducting the search are not sufficiently regulated to assure that the search is in furtherance of legitimate police caretaking functions, unrelated to the existence *vel non* of probable cause, and not in furtherance of the officer's own investigatory motives.

In the case at bar, the State did not present any evidence of the existence of a standard inventory search policy. Officer Novotny testified that he performed an inventory, and made out an inventory slip. That evidence did not tend to prove the existence of an inventory search policy, that the officer was acting pursuant to such a policy, and the pertinent contents of any such policy—for example, whether it permitted searching inside closed containers, such as the "Marlborough" bag. While in argument the prosecutor made reference to Anne Arundel County's having a policy that all vehicles subject to being towed are to be searched, and while such a policy may exist (and may even have been known by the trial judge to exist), we must base our decision on the evidence actually presented at trial. There was no evidence of any standardized policy, rule, or regulation of any sort governing inventory searches by Anne Arundel County police offi-

cers; and there was no evidence that Officer Novotny carried out his search in accordance with any such policy.

The trial judge found that the officer's testimony about his personal routine for conducting automobile searches was sufficient to show that he was following a standard procedure in carrying out the search. From the Supreme Court cases we have discussed, it is evident that testimony by an officer about his personal routine for conducting automobile searches will not satisfy the requirement that a standard inventory search policy be shown to exist and to have been followed. The value in standardized inventory search policies and the reason their existence is critical to the inventory search exception is that external, objective, and routine controls remove the individual police officer's discretion over whether to conduct a search and limit his discretion over how to conduct the search, thereby minimizing the risk that inventory searches will be used as after-the-fact justifications for unsupported investigatory searches. A police officer's individual practice for conducting searches is internal, subjective, and routine only to him and not to others. The interests to be advanced by regulating police officer inventory searches are not advanced by leaving each police officer free to adopt his own inventory search practice.

The State maintains that the three Maryland cases the appellant relies on to argue that the trial court erred in concluding that the search here was a valid inventory search are inapposite, because they each involve situations in which the surrounding circumstances were more consistent with the officer's conducting the search as a pretext to investigate criminal activity. *See Bell v. State,* 96 Md.App. 46, 623 A.2d 690 (1993), *aff'd,* 334 Md. 178, 638 A.2d 107 (1994); *Smith v. State,* 48 Md.App. 425, 427 A.2d 1064, *cert. denied,* 290 Md. 722 (1981); *Manalansan v. State,* 45 Md.App. 667, 415 A.2d 308 (1980). The State argues that the surrounding circumstances in this case—that the vehicle was required by law to be impounded, that a tow truck had been called, that the officer testified that he prepared an inventory of the contents

of the vehicle, and that there were no facts to suggest that Officer Novotny had any suspicion that there was contraband in the vehicle before he searched it—all point toward Officer Novotny's indeed having searched the car for the purpose of inventorying it, and not as a pretext to "rummage around" for evidence of a crime.

■ We agree with the State that the facts in evidence do not point in the direction of a pretextual search. Nevertheless, as we have explained, the Supreme Court case law requires that, for a search to in fact be a valid inventory search in the eyes of Fourth Amendment law, there must be proof that the search was carried out pursuant to an existing policy regulating police inventory searches. That evidence is essential to establishing the inventory search exception, regardless of whether the total circumstances seem more consistent with the search's having been performed for a community caretaking purpose than for an investigatory purpose.[2]

### Search Incident to Arrest

■ Another well-established exception to the warrant requirement is the search incident to a lawful arrest. In *New York v. Belton, supra,* the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of

---

2. Likewise, the inevitable discovery doctrine would not apply. See *Williams v. State,* 372 Md. 386, 410, 813 A.2d 231 (2002); *Stokes v. State,* 289 Md. 155, 162–63, 423 A.2d 552 (1980). While we might postulate that, because the Tracer was to be towed to a police impound lot, at some point it would have been searched for community caretaking purposes, without evidence of an inventory search policy, we can only speculate that that would happen. Thus, for the same reason the evidence was not sufficient to support a finding that the search actually conducted was an inventory search, the evidence was insufficient to support a finding that the contraband inevitably would have been discovered in a later search. *See United States v. Mendez,* 315 F.3d 132, 137–38 (2nd Cir.2002) (explaining that the inevitable discovery doctrine for inventory searches requires that the police have lawful custody of the vehicle to be searched, the police agency in question conduct inventory searches pursuant to standardized procedures, and "those inventory procedures would have 'inevitably' led to the 'discovery' of the challenged evidence").

that arrest, search the passenger compartment of that automobile." 453 U.S. at 460, 101 S.Ct. 2860 (footnotes omitted). The *Belton* Court, stating that it was establishing a "bright line" rule to provide guidance, based its holding on the principle established in *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), that a search of a person lawfully arrested may not stray beyond the "area 'within [the] immediate control' " of the arrestee, where he might reach to grab a weapon or item of evidence.

The Court in *Belton* explained that while the search incident exception as applied to automobiles permits officers to search containers within the passenger compartment of a vehicle that was occupied by a person lawfully arrested, it does not permit officers to search the trunk of such a vehicle. *New York v. Belton, supra*, 453 U.S. at 461 n. 4, 101 S.Ct. 2860. In dissent, Justice Brennan argued that the rule being established was too broad and, rather than being "bright line," was ambiguous. Among other things, he wondered, "[W]hat is meant by 'interior'? ... Are special rules necessary for station wagons and hatchbacks, where the luggage compartment may be reached through the interior ...?" *Id.* at 470, 101 S.Ct. 2860.

▬▬▬▬ We agree with the appellant that the State waived for appellate review the issue of whether the search in this case was valid under *Belton*. Ordinarily, an issue is not preserved for appellate review if it was not raised or decided below. Rule 8–131(a). It is not necessary that the issue have been decided, so long as it was raised. *Conyers v. State*, 367 Md. 571, 593–94, 790 A.2d 15 (2002) (stating that "an argument *not raised* in the proceeding below is not preserved for appellate review" (emphasis added)); *Walker v. State*, 338 Md. 253, 262, 658 A.2d 239 (1995), *cert. denied*, 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995) ("[An appellate court] ordinarily will not review an issue that was not presented to the trial court."). Here, notwithstanding that the State bore the burden of proving that the warrantless search was constitutional, *see Florida v. Riley*, 488 U.S. 445, 465–66, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989); *Vale v. Louisiana*, 399 U.S. 30,

34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), it neither raised nor advanced the *Belton* argument before the trial court.

At the outset of his suppression argument, defense counsel explained that, in his view, the search was not a valid search incident to arrest under *Belton*. In response, the prosecutor did not address the search incident issue, except to dismiss it by saying the inventory search exception was "stronger." The State made no argument based on *Belton*. Its argument to the trial court in opposition to the suppression objection focused entirely on the inventory search exception. Defense counsel and the court proceeded on the apparent assumption that the State was not pursuing a *Belton* argument. In his rebuttal argument, defense counsel made no additional mention of *Belton*. The court made no factual findings relevant to a search incident issue and did not address it in its ruling.

The posture of this case on appeal is similar to that in *State v. Bell, supra,* 334 Md. at 181, 638 A.2d 107. In that case, the defendant moved to suppress illegal drugs found in a search of his automobile. The State argued that the vehicle was lawfully searched under the inventory exception to the Fourth Amendment. The circuit court agreed and denied the motion to suppress. On appeal, the defendant argued that the court's ruling had been in error. The State then raised for the first time that the search had been valid under the automobile exigency exception. This Court reversed the conviction on the inventory search issue and declined to reach the automobile exigency exception issue. The Court of Appeals affirmed. It likewise declined to address the automobile exigency exception issue, stating:

[B]ecause warrantless searches are presumptively unreasonable, subject to only a few well-delineated exceptions, and the burden of proving the applicability of an exception to the warrant requirement rests on the State, Bell cannot be expected to rebut possible justification for the search on his own initiative. The State may not lead the defendant and the trial court down a primrose path, only to leave them

stranded when, on appeal, the State deems it advantageous to change its strategy.

334 Md. at 191, 638 A.2d 107 (internal citations omitted).

To be sure, in this case, defense counsel's opening argument on the suppression issue anticipated that the State would rely on *Belton* to justify the search. When the State did not rely on *Belton*, however, but instead argued exclusively on the basis of the inventory search exception, the defense ceased discussion of *Belton* and the court treated the *Belton* case as if it had not been mentioned. This was not accidental or by oversight. From the prosecutor's argument, it was clear that the State was not relying on *Belton*. There was no less a "primrose path" in this case than there was in *Bell*.

As the appellant points out in his reply brief, the State's tactic in limiting its argument below resulted in a record that is not developed enough to allow meaningful review of the *Belton* issue in any event. Whether the hatchback area of a vehicle is part of the passenger compartment, and therefore subject to search incident to a lawful· arrest, or part of the trunk, and therefore not subject to such a search, is not an abstract query. Rather, it is a fact-bound question that concerns the accessibility, or not, of the hatchback area of the vehicle in question to its occupants. For example, in *United States v. Russell,* 670 F.2d 323, 216 U.S.App. D.C. 165 (D.C.Cir.1982) (Ginsburg, J.), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982), the Court of Appeals for the District of Columbia Circuit, noting that a police officer testified at the suppression that the hatchback area was "accessible to the passengers from the rear seat, or if the driver wants to lean over[,]" *id.* at 324, held that "a hatchback reachable without exiting the vehicle properly ranks as part of the interior or passenger compartment." *Id.* at 327. *See also United States v. Doward,* 41 F.3d 789, 794 (1st Cir.1994), *cert. denied,* 514 U.S. 1074, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995) (holding that the search of an uncovered hatchback portion of a vehicle was proper because it was within the defendant's reach); *United States v. Rojo–Alvarez,* 944 F.2d 959 (1st Cir.1991) (holding that hatchback area of vehicle that was

within the defendant's reach was properly subject to search under *Belton*); *United States v. Pino*, 855 F.2d 357, 364 (6th Cir.1988), *cert. denied*, 493 U.S. 1090, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990) (applying the rule to the rear section of a mid-sized station wagon).

Here, neither the testimony of Officer Novotny nor photographs of the Tracer that were introduced into evidence established that the hatchback area of Tracer, in which the red nylon bag containing the contraband was found, was accessible or in some manner reachable by occupants of the vehicle. The prosecutor did not question Officer Novotny about the configuration of the Tracer, and specifically about whether the appellant could have reached the hatchback area of the car from the driver's seat. In all likelihood, the court made no findings about the vehicle pertinent to the *Belton* issue and did not rule on the issue because the prosecutor did not fashion her questions to Officer Novotny to advance a *Belton* argument and because the prosecutor then did not make the argument. Consequently, we are left with a record that does not enable us to address the issue.

The State waived any argument that the search of the hatchback area of the Tracer was a constitutionally valid search incident to lawful arrest, under *Belton*. Accordingly, because the search was not constitutional under the inventory exception, the trial court erred in denying the motion to suppress made during trial, and in admitting into evidence the contraband found in the Tracer.

## II.

The appellant next contends that the evidence at trial was insufficient to support his conviction for possession of marijuana. Specifically, he contends the evidence could not reasonably establish that he knew of the presence of the marijuana in the hatchback area of the vehicle. Even though we have decided this appeal based on our resolution of the first issue, double jeopardy principles require that we address the sufficiency of the evidence issue if we are to remand the case for

further proceedings. *Winder v. State*, 362 Md. 275, 324, 765 A.2d 97 (2001).

When he was searching the Tracer's hatchback compartment, Officer Novotny was standing next to the rear of the vehicle, with his body facing its license plate. He placed the red bag on the top cover of the hatchback compartment, inside the car and slightly to the right of the hatchback area, and then looked through the bag. As he did so, he stood "right over the bag," looking down on it. When Officer Novotny found the baggie containing marijuana, he put it on the cover of the hatchback compartment, next to the red bag.

During the search, the appellant was sitting in the front passenger seat of Officer Novotny's cruiser, which was parked directly behind the Tracer. The Tracer's rear bumper was about 20 feet from the cruiser's front passenger seat. According to Officer Novotny, the rear of the Tracer and the hood of the cruiser were separated by five or six feet.

For officer safety, Officer Harding stood next to the cruiser and watched the appellant as Officer Novotny conducted the search. According to Officer Harding, at one point, Officer Novotny said he thought he had "something good." Officer Harding approached him and to see what he had found. Officer Novotny then said, "I have some stuff here." Officer Harding could not see what Officer Novotny had found until she walked up to the Tracer, at which time she noticed the marijuana and the gun.

Officer Harding explained that Officer Novotny was standing facing the hatchback and when she approached him, they were shoulder to shoulder. Officer Novotny showed her the baggie of marijuana. She made no mention to the appellant about Officer Novotny's having found a gun or drugs in the car. Also, Officer Novotny said nothing about that to the appellant. Officer Harding did not recall whether the windows of the police cruiser were closed, but explained that because it was December, that would have been the usual procedure. From Officer Harding's position next to the cruis-

er, she could not see the items Officer Novotny recovered in the search.

After the search was completed, Sergeant Roland Haig, Officer Novotny's supervisor, arrived. They discussed the contraband Officer Novotny had discovered in the Tracer and Officer Novotny showed Sergeant Haig what he had found, pointing out the marijuana and the gun. Officer Novotny testified that the word "marijuana" or a slang term for that drug may have been used during the conversation. Officer Harding testified that she believed Sergeant Haig was in his police car during the search, calling for a tow truck. She was unaware whether Sergeant Haig spoke to the appellant.

About ten or fifteen minutes after Officer Harding arrived at the scene, she removed the appellant from Officer Novotny's cruiser, put him in her police car, and transported him to the station house. Officer Harding said nothing to the appellant about the drugs or gun that were found in the search. She noticed two officers conversing behind the Tracer as she removed the appellant from Officer Novotny's cruiser, but she could not hear what they were saying.

During the ride to the station house, the appellant asked Officer Harding whether he was being charged with possessing drugs. She responded that she did not know. He then said he thought only owners of cars are charged with possession of drugs found in them. He further said that the drugs in the Tracer were not his, and belonged to his cousin.[3] The appellant asked Officer Harding what was going to happen. She said she did not know. He then asked Officer Harding whether an "arrangement" could be made for him to "work off" the charges.

Officer Harding testified that at no time before the appellant made these remarks did she or anyone else tell him about the contraband found in the search of the Tracer.

---

**3.** Officer Harding was not certain if the appellant said the drugs belonged to a cousin or a friend.

The appellant was convicted of the crime of possession of a controlled dangerous substance, in violation of Md.Code (1996 Repl.Vol.), art. 27, section 287. Possession is "the exercise of actual or constructive dominion or control over a thing by one or more persons." Art. 27, section 277(s). Thus, a person may be in possession when he has actual or constructive possession of a controlled dangerous substance, and the possession may be either exclusive or joint in nature. *Moye v. State*, 369 Md. 2, 14, 796 A.2d 821 (2002).

"[T]o prove control, the 'evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited ... drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or directing influence over it.' " *McDonald v. State*, 347 Md. 452, 474, 701 A.2d 675 (1997) (quoting *State v. Leach*, 296 Md. 591, 596, 463 A.2d 872 (1983) (in turn quoting *Garrison v. State*, 272 Md. 123, 142, 321 A.2d 767 (1974))). *See also, Moye, supra*, 369 Md. at 13, 796 A.2d 821; *White v. State*, 363 Md. 150, 166–67, 767 A.2d 855 (2001); *Taylor v. State*, 346 Md. 452, 457–58, 697 A.2d 462 (1997).

Knowledge is an essential element of the crime of possession of illegal drugs. In *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988), the Court explained that a person "ordinarily would not be deemed to exercise 'dominion or control' over an object about which he is unaware. Knowledge of the presence of an object is normally a prerequisite to exercising dominion or control." *Id.* at 649, 547 A.2d 1041. *See also Moye v. State, supra*, 369 Md. at 14, 796 A.2d 821; *White v. State, supra*, 363 Md. at 163, 767 A.2d 855; *Taylor v. State, supra*, 346 Md. at 460, 697 A.2d 462. Therefore, in order to be found guilty of possession of a controlled dangerous substance, the State must show that the defendant knew of both "the presence and the general character or illicit nature" of the drugs. *Dawkins v. State, supra*, 313 Md. at 651, 547 A.2d 1041.

The appellant argues that the evidence was insufficient to show that he had knowledge of the presence of the marijuana in the Tracer and that he exercised dominion and control over it. We disagree.

In deciding sufficiency questions on appellate review, we ask ourselves whether, from the facts adduced at trial, viewed in a light most favorable to the State as the prevailing party, any reasonable fact-finder could find the existence of the elements of the crime charged, beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If the answer to that question is yes, then the evidence is sufficient to support the conviction.

■■■ Here, a fact-finder reasonably could conclude that, prior to the conversation with Officer Harding in which the appellant admitted awareness of the presence of illegal drugs in the Tracer, the appellant did not see Officer Novotny recover the marijuana from the rear hatchback area of the Tracer, did not hear any reference to drugs having been found in the vehicle, and did not learn through some other post-arrest source that there were drugs in the vehicle. From that finding, a reasonable fact-finder reasonably could infer that the appellant knew the drugs were in the vehicle before he was arrested. Accordingly, there was sufficient evidence to support the knowledge element of the crime of possession of CDS. Moreover, as the Court of Appeals recently explained in *State v. Smith,* 374 Md. 527 at 550, 823 A.2d 664 at 677-78 (2003), it is reasonable for a fact-finder to infer that the driver of a car knows the contents of the car, including the contents of the trunk.

Finally, a reasonable fact-finder also reasonably could infer that as the driver and sole occupant of the vehicle containing the marijuana the appellant not only knew of its existence but was exercising dominion and control over it by transporting it.

**JUDGMENT OF CONVICTION FOR POSSESSION OF CONTROLLED DANGEROUS SUBSTANCE REVERSED; REMAINING JUDGMENT OF CONVICTION FOR DRIVING WHILE REVOKED OTHERWISE AFFIRMED.**

CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.